IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| RACHEL KNAVEL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 07-03170-CV-S-NKL ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendants. | ) |

**ORDER**

Plaintiff Rachel Knavel ("Knavel") challenges the Social Security Commissioner's finding that she is no longer entitled to disability insurance benefits ("benefits") pursuant to Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. The Administrative Law Judge ("ALJ") found the following: the impairment which once qualified Knavel for benefits had improved, her current impairments did not qualify her for benefits, and she retained the residual functional capacity to do light work. Knavel has exhausted her administrative remedies, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1]

The ALJ properly considered the evidence. His decision is supported by the substantial weight of that evidence. Therefore, the Court denies Knavel's petition and

---

[1] Portions of the parties' briefs are adopted without quotation designated.

1

affirms the decision of the ALJ.

## I.    Factual and Procedural History

Knavel was born in 1970. She first started receiving benefits after being approved in March 1994. She was approved for benefits because she was suffering from chronic renal failure. After an unsuccessful attempt in 1998, Knavel was eventually able to undergo a successful kidney transplant in 2000. Since that time, she has taken immunosupressants chronically and has suffered repeated urinary tract infections, although her kidney transplant has been clinically stable.

The Commissioner regularly reviews disability determinations. As part of such a review, Knavel was directed to report to Dr. Ballard in September 2004. Dr. Ballard noted that Knavel's chief and only complaint was a history of renal disease. He noted that most people can do usual activities and hold usual types of employment after successful kidney transplants. Knavel reported to Dr. Ballard that she had not worked outside the home for the past fifteen years, but she had been caring for her mentally disabled daughter. Dr. Ballard concluded that Knavel had no restrictions on her activities and was able to do chores, shopping, and outdoor activities. Dr. Ballard noted that Knavel had several febrile illnesses which were consistent with her immunosuppressant treatment. Dr. Ballard reported that Knavel might have difficulty finding employment: she had a history of transplant, and would be at a higher risk of absenteeism and medical expenses due to complications in the future. Dr. Ballard opined that Knavel could do mild to moderate labor activities, though she could not do heavy labor activities.

In October 2004 and January 2005, two state agency medical consultants reviewed Knavel's medical records. Both found that she was capable of performing light work.

In December 2004, Knavel started experiencing swelling and tenderness due to a lipoma in the left lumbosacral area. She reported to Dr. Kell, her nephrologist since 1994. Dr. Kell directed her to report to her primary care physician.

A hearing examination around July 2005 revealed that Knavel had 60% of her hearing in one ear and 40% in the other.

In September 2005, Knavel saw her primary care physician due to an upper respiratory infection and called him to report problems with her legs falling out from under her. In October 2005, she suffered from a fever and acute bronchitis.

In December 2005, Dr. Kell (nephrologist) completed a Medical Source Statement-Mental in regard to Knavel. He opined that Knavel was markedly limited in the following abilities: to complete a normal workday and workweek without interruptions from psychologically-based symptoms; to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others.

At the end of January 2006, Knavel saw Dr. Kell, indicating that she had passed out and struck her head. This occurred at 2:00 a.m., after drinking wine with friends. She

3

reported that, upon awakening, her speech was not normal and her body felt heavy. Dr. Kell opined that Knavel was suffering from sleep deprivation, alcohol consumption and orthostatic hypotension.

In December 2004, an employee of Knavel's attorney's office included a note in Knavel's Disability Report – Appeal. The note states that Knavel behaved as if she were depressed, and cried throughout her interview.

In early February 2006, Knavel testified before the ALJ. She testified that she had obtained her GED and was taking classes. At the time of her testimony, she was on probation at school because she had missed classes due to illness. Knavel testified that she had limitations with concentration, but denied difficulty with managing finances or following directions. She further testified that she experienced increased fatigue, crying spells, frequent infections, problems with memory, decreased hearing, mood swings, the need to isolate, headaches, anxiety, bloating in her legs and hands, and back pain even when not experiencing a urinary tract infection.

She testified that she was the "24/7" caregiver for her mentally disabled daughter. Though Knavel could leave her daughter for a couple of hours, Knavel did not like to do so. She testified that she was afraid to talk about her psychological problems because she has custody of her disabled daughter: the Department of Family Services had removed her daughter from her custody in the past.

At the hearing, counsel for Knavel requested that the ALJ order a psychological consultative examination in order to develop the record concerning Knavel's mental

4

impairments. The ALJ denied the request.

In March 2006, the ALJ issued an unfavorable decision, concluding that Knavel's disability ended in October 2004. The Appeals Council denied Knavel's request for review in May 2007.

## II.     Discussion

### A.     Standard for Continuing Disability Review

Claims for disability benefits are reviewed periodically to determine whether medical improvement has resulted in the ability to work. *Mittlestedt v. Apfel*, 204 F.3d 846, 852 (8th Cir. 2000) (citing 20 C.F.R. § 404.1594). Claimants in disability benefits cases have a "continuing burden" to demonstrate disability, and no inference is to be drawn from the fact that they have previously been granted benefits. *Nelson v. Sullivan*, 946 F.2d 1314, 1315 (8th Cir. 1991) (citations omitted). Once claimants make this initial demonstration, the burden shifts to the Commissioner to demonstrate that they are not disabled. *Id.* In order to cease benefits due to improvement in a claimant's medical condition, the Commissioner must demonstrate that the "conditions which previously rendered the claimant disabled" have improved, and that the claimant is able to work. *See id.* (citing 20 C.F.R. § 404.1594(b)(2)-(5)).

The *Dixon* court outlined the review process for determining whether a claimant's medical condition has improved:

> The continuing disability review process is a sequential analysis prescribed in 20 C.F.R. § 404.1594(f). The regulations for determining whether a claimant's disability has ceased may involve up to eight steps in which the

> Commissioner must determine (1) whether the claimant is currently
> engaging in substantial gainful activity, (2) if not, whether the disability
> continues because the claimant's impairments meet or equal the severity of
> a listed impairment, (3) whether there has been a medical improvement, (4)
> if there has been medical improvement, whether it is related to the
> claimant's ability to work, (5) if there has been no medical improvement or
> if the medical improvement is not related to the claimant's ability to work,
> whether any exception to medical improvement applies, (6) if there is
> medical improvement and it is shown to be related to the claimant's ability
> to work, whether all of the claimant's current impairments in combination
> are severe, (7) if the current impairment or combination of impairments is
> severe, whether the claimant has the residual functional capacity to perform
> any of his past relevant work activity, and (8) if the claimant is unable to do
> work performed in the past, whether the claimant can perform other work.
> 20 C.F.R. § 404.1594(f).

*Dixon*, 324 F.3d at 1000-1001.

### B. The ALJ's Decision

The ALJ found that Knavel no longer had a disabling impairment. He determined that Knavel was not currently engaged in substantial gainful activity. He found: (a) renal failure was the only impairment at the time Knavel was last approved for benefits; (b) Knavel did not develop any additional impairments; and (c) as of October 2004, Knavel did not have any impairment or combination of impairments which met the severity of a listed impairment. The ALJ rejected Knavel's argument of current mental impairment. He found that Knavel no longer had a listed impairment because of the improvement in her renal functioning. The ALJ stated that, while Knavel's remaining impairment was severe, she retained the ability to do light work.

Knavel takes issue with the ALJ's decision. She argues that the ALJ should have ordered a psychological consultative examination to determine whether she suffered from

a mental disability. She also argues that the ALJ failed to properly consider evidence in considering her Residual Functional Capacity ("RFC") for work.

### C. Consultative Examination

First, Knavel argues that the ALJ should have ordered a psychological consultative examination. ALJs may order consultative examinations when the record does not contain sufficient medical evidence to allow then to make informed decisions. 20 C.F.R. § 416.917(a); *Matthews v. Bowen*, 879 F.2d 422, 424-25 (8th Cir. 1989). It is the duty of an ALJ to develop the record fully and fairly on medical issues. *See Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir.1994). There is no bright-line test for determining when an ALJ fails to develop the record; the determination must be made on case-by-case basis. *Id.* "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.1995) (citation omitted). Therefore, the issue is whether the record contained sufficient evidence for the ALJ to make an informed decision concerning Knavel's alleged mental impairment.

#### 1. Medical Evidence

Knavel contends that the medical evidence does not adequately reflect her mental condition. She notes that the opinion of her nephrologist, Dr. Kell, indicates her marked mental health limitations. She argues that this opinion was not a complete psychological examination. Therefore, Knavel states, the ALJ should have ordered a consultative examination.

7

However, the ALJ did consider the medical evidence of mental impairment. Dr. Kell issued the Medical Source Statement – Mental. A specialist's opinion is generally given less weight where that opinion does not relate to the area of specialty. *See* 20 C.F.R. § 416.927(d)(5); *see also Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1999). The ALJ noted that Dr. Kell is not a specialist in mental health.

Moreover, the ALJ considered that Dr. Kell had never diagnosed Knavel with a mental disorder or referred her to a mental health professional. The absence of evidence of ongoing psychiatric treatment or deterioration/change in mental capability disfavors a finding of disability. *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).

The ALJ noted that Dr. Kell's opinion appears to be based solely on Knavel's subjective complaints regarding her response to stress. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003) (noting that even antidepressant prescription was not enough to require ALJ to inquire further into condition by ordering psychological evaluation). ALJs may be justified in discrediting physicians' opinions which are based solely on claimants' subjective complaints and not supported by other findings. *See Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993).

### 2. Non-Medical Evidence

Knavel argues that the ALJ failed to consider the non-medical evidence of her mental state, including her testimony concerning her alleged mental impairment. In considering Knavel's testimony, the ALJ did acknowledge and consider the factors for evaluating subjective complaints set out in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir.

1984), and the regulations at 20 C.F.R. § 416.939.  An ALJ may disbelieve a claimant because her testimony is inconsistent with other evidence in the record.  *Eichelberger v. Barnhart*, 90 F.3d 584 (8th Cir. 2004).

The ALJ considered Knavel's testimony.  He noted that she testified that she was depressed and would have crying spells, experience a lack of motivation, feel chronically fatigued, became moody, and no longer wanted to associate with people.  After considering the evidence, the ALJ found that Knavel's medically determinable impairment (renal failure) could have reasonably been expected to produce the alleged symptoms, but that her statements concerning the intensity, duration and limiting effects of the symptoms were not entirely credible.

The ALJ discounted Knavel's testimony because he found it inconsistent with the medical evidence.  An ALJ may not discount allegations of disability based on a lack of objective medical evidence alone; but the ALJ may consider a lack of objective medical evidence when determining a claimant's credibility.  *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004). The ALJ noted that the medical records did not contain any diagnosis or treatment of mental disorder.  He found that the medical evidence did not suggest a disorder that could cause chronic fatigue, other than Dr. Kell's diagnosis of sleep deprivation related to the care of Knavel's daughter.  The ALJ acknowledged Dr. Ballard's report that Knavel complained of no impairment other than kidney disease.  He noted that, while Dr. Kell did report situational anxiety on the eve of trial, Knavel had never been referred to a mental health professional.

9

The ALJ also found Knavel's testimony inconsistent with other evidence.  Dr. Ballard noted that Knavel was not restricted in her activities and that she was able to do mild labor. "Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations." *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001).

Further, the ALJ noted that Knavel identified her need to care for her disabled daughter as a factor significant to her alleged inability to work.  She had reported this to Dr. Ballard.  The ALJ found that Knavel's absence from work was related to family responsibilities. Considered in the context of the other evidence, the evidence of Knavel's activities supports the ALJ's conclusion that Knavel was not fully credible.

The ALJ did not determine that he lacked enough information to make a finding concerning mental health; instead, the ALJ considered the evidence as a whole and found that it did not give rise to the possibility of severe mental impairment.  As such, the ALJ was justified in denying a request for a consultative examination.  *See Tellez v. Barnhart*, 403 F.3d 953, 956-57(8th Cir. 2005) ("Tellez contends that the ALJ did not 'fully and fairly develop the record' concerning her limitations and that if the 'ALJ did not believe that the professional opinions available ... were sufficient to allow him to form an opinion, he should have further developed the record.'  However, there is no indication that the ALJ felt unable to make the assessment he did and his conclusion is supported by substantial evidence."); *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) ("Here, the ALJ did not find the doctors' records inadequate, unclear, or incomplete, nor did [he] find the doctors used unacceptable clinical and laboratory techniques.  Instead, the ALJ

discounted the opinions because they were inconsistent with other substantial evidence. In such cases, an ALJ may discount an opinion without seeking clarification."); *Matthews*, 879 F.2d at 424-25 (8th Cir. 1989) (holding that ALJ did not err by failing to order psychological consultative examination where treating physician gave opinion of mental impairment unsupported by clinical or diagnostic data, claimant was treated with antidepressants, and claimant testified she suffered from "nerves")

        D.        **Residual Functional Capacity**

Knavel next argues that the ALJ improperly determined her residual functional capacity ("RFC"). RFC findings must be based on all record evidence, and the burden to prove the RFC is on the claimant. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001); SSR 96-8p at 8-9. Knavel says that the ALJ failed (1) to indicate the evidence upon which he was relying in assessing her RFC, (2) to consider Knavel's testimony when assessing RFC, and (3) to properly consider evidence of her daily activities.

In determining RFC, the ALJ found that Knavel had an RFC to perform light work, with certain restrictions. The ALJ stated that he considered all symptoms and opinion evidence in accordance with the relevant regulations and Social Security rulings.

        1.        **Medical Evidence**

Knavel argues that the ALJ did not adequately consider the medical evidence in determining her RFC. Specifically, she argues that the ALJ did not consider the opinion in Dr. Kell's Medical Source Statement – Mental.[1] However, as discussed above, the ALJ

---

[1] Knavel also contends – in her argument for a consultative opinion – that the Medical Source Statement – Mental is incomplete.

11

did consider that opinion. The ALJ discounted it because of Dr. Kell's lack of specialty and because it was based on Knavel's subjective complaints.

Also, the ALJ noted the opinions of the two State agency medical consultants. The ALJ acknowledged that those medical opinions are entitled to less weight as they were non-examining physicians. Nonetheless, those opinions state that Knavel retained the RFC to perform light work.

Knavel further argues that the ALJ did not expressly note Dr. Ballard's opinion. She proffers the portion of Dr. Ballard's opinion that states she could perform light to moderate labor activities, but would have a hard time finding employment due to her transplant history and risk of absenteeism. Knavel notes that absenteeism was the reason for her probation at school. The ALJ clearly considered Dr. Ballard's report, if not this specific section of it. Dr. Ballard's opinion that Knavel might have a hard time finding a job might address the issue of whether there would be a significant number of jobs available to Knavel; but she does not argue that Dr. Ballard's opinion outweighed that of the vocational expert. Dr. Ballard's ultimate opinion that Knavel is capable of performing light work only further supports the ALJ's conclusion of RFC. Thus, the ALJ's conclusion is supported by the medical evidence.

### 2. Subjective Testimony

Knavel argues that the ALJ failed to consider her subjective testimony concerning her RFC. As discussed further above, the ALJ acknowledged and considered the *Polaski* factors and gave appropriate weight to Knavel's testimony. The ALJ discounted Knavel's

subjective complaints because he found them exaggerated and inconsistent with the evidence as a whole. *See Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir.2005) (requiring deference to ALJ's credibility determination where it is supported by good reasons and substantial evidence).

"Subjective complaints of pain may be discounted if there are inconsistencies in the evidence as a whole." *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (citation and internal quotation marks omitted). The ALJ compared Knavel's allegations of totally debilitating symptoms to the medical evidence. Knavel's original disability benefits award was based on renal failure; the ALJ recognized that Knavel no longer needs dialysis and that her lab tests show normal kidney function. He found: the medical records did not contain any diagnosis or treatment of mental disorder; there was no medical disorder that could cause chronic fatigue; the frequent falls were not supported by the medical evidence and Dr. Ballard observed normal gait and movement; and, while infections were consistent with immunosuppressant therapy, the infections enumerated in the medical evidence (and the ALJ's decision) did not document unusually severe or frequent infections. The ALJ also recognized Dr. Ballard's opinion that Knavel would be capable of mild to moderate labor. Given this evidence, the ALJ properly discounted Knavel's testimony as inconsistent with the medical evidence.

### a. Hypothetical Question

The ALJ considered testimony of the vocational expert in finding Knavel capable of work. The vocational expert answered a hypothetical question which set forth

Knavel's limitations in a manner consistent with the ALJ's eventual finding concerning her limitations (which necessarily included his conclusion that her complaints were not entirely credible). *See Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992) (requiring hypothetical questions to set forth claimants' impairments); *Pertuis v. Apfel*, 152 F.3d 1006, 1007(8th Cir. 1998) (indicating that hypothetical questions need only include limitations found credible by ALJ); *Guillams v. Barnhart,* 393 F.3d 798, 804 (8th Cir. 2005) (finding discredited subjective complaints properly excluded from hypothetical question). The ALJ considered the vocational expert's testimony that Knavel could perform jobs existing in significant numbers in the local and national economies, such as light mail clerk and charge account clerk. The vocational expert's properly-framed testimony supports the ALJ's decision.

### 3. Daily Life Activities

Knavel takes issue with the ALJ dismissing her testimony on the basis that her daily activities were inconsistent with allegations of total debilitation. ALJ's must use care in considering evidence of daily life activities. "[A] claimant's ability to perform household chores does not necessarily prove that claimant capable of full-time employment." *Ekeland v. Bowen*, 899 F.2d 719,722 (8th Cir. 1990) (citation omitted). In *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005), the Eighth Circuit explained:

> We must guard against giving undue evidentiary weight to a claimant's ability to carry out the activities incident to day-to-day living when evaluating the claimant's ability to perform full-time work. . . . Although acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility, this court has repeatedly observed that the ability to do activities such as light

14

> housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work.

*Id.* (citations and internal quotation marks omitted). However, an ALJ may consider daily life activities and whether they are inconsistent with claim of disability. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir.2004)

In the instant case, the ALJ properly considered Knavel's daily life activities – he did so to the extent they were inconsistent with Knavel's allegation of total disability. The ALJ found Knavel's daily life activities – which consist of more than light housework and visiting with friends – were inconsistent with her claim. The ALJ noted that Knavel was able to provide supervision and physical care for her profoundly disabled daughter, drive to school daily, shop, care for her home and grounds and perform all activities of daily living without assistance. While she alleged limited concentration, she denied difficulty managing her finances or following directions, and admits that she obtained her GED and enrolled in post-secondary courses. He also noted evidence of social interaction which appeared in medical records and which was inconsistent with Knavel's allegation of isolation. The ALJ concluded that Knavel's absence from work was clearly related to family responsibilities. He noted that she identified her need to care for her disabled daughter as a factor significant to her alleged inability to work and that she had reported this to Dr. Ballard. The ALJ commented that, while Knavel's devotion to her daughter cannot be faulted, it cannot be used as a basis for a finding of disability. The ALJ properly considered Knavel's daily life activities as inconsistent with her claim that she

15

was unable to work.

## III. Conclusion

The ALJ's decision is supported by the substantial weight of the evidence.

Accordingly, it is hereby

ORDERED that Rachel Knavel's petition [Docs. ## 4, 8] is DENIED. The ALJ's decision is AFFIRMED.

                                                    s/ Nanette K. Laughrey
                                                  NANETTE K. LAUGHREY
                                                  United States District Judge

Dated: July 28, 2008
Jefferson City, Missouri